Stewart, J.
At the outset of this case, defendant moved the court to enter judgment in her behalf because the affidavit did not state a cause of action, which motion was overruled and exception taken.
Defendant contends that the court erred in overruling the motion.
Section 12694, General Code, provides in part as follows:
“Whoever practices medicine or surgery, or any of its branches before obtaining a certificate from the State Medical Board in the manner required by law, or whoever advertises or announces himself as a practitioner of medicine or surgery, or any of its branches, before obtaining a certificate from the State Medical Board in the manner required by law; or whoever opens or conducts an office or other place for such practice before obtaining a certificate from the State Medical Board in the manner required by law; or whoever not being a licensee conducts an office in the name of some person who has a certificate to practice medicine or surgery, or any of its branches; or whoever practices medicine or surgery, or any of its branches, after a certificate has been duly revoked, or, if suspended, during the time of such suspension, shall * * *.”
*419 Defendant contends that since the affidavit shows that at the time of the offense of which she was charged she was the holder of three certificates issued by the State Medical Board, authorizing her respectively to practice chiropractic, electrotherapy and' mechanotherapy, she was not engaged in the practice of any of the branches of medicine or surgery without a license as alleged in the affidavit.
There is some force to defendant’s contention.
There are no common-law crimes in Ohio, and it is well established that penal statutes must be construed strictly.
This court held in State v. Meyers, 56 Ohio St., 340, 47 N. E., 138, that “a statute defining a crime or offense cannot be extended, by construction, to persons or things not within its descriptive terms, though they appear to be within the reason and spirit of the statute.”
However, Section 12694, General Code, must be read in connection with Section 1274-1, which authorizes the State Medical Board to “examine and register persons desiring to practice any limited branch or branches of'medicine and surgery” and which defines such limited branches to “include chiropractic * * * mechanotherapy * * * electrotherapy,” and also must be read in connection with Section 1274-3, which provides that “such certificate shall authorize the holder thereof to practice such limited branch or branches of medicine or surgery as may be specified therein, but shall not permit him to practice any other branch or branches of medicine or surgery nor shall it permit him to treat infectious, contagious or venereal diseases, nor to prescribe or administer drugs, or to perform major surgery.”
It is axiomatic that in construing a statute a court *420 should, if possible, avoid a construction which would lead to an absurd or meaningless situation, and the only reasonable construction of Section 12694 must be that the phrase therein, “whoever practices medicine or surgery, or any of its branches, before obtaining a certificate from the State Medical Board in the manner required by law,” contemplates a certificate to practice coextensive with the practice one seeks to engage in. Under such a construction, prosecutions are authorized under Section 12694, General Code, whenever a holder of a certificate to practice a limited branch of medicine engages in a practice beyond the scope of the limited certificate.
In our opinion, therefore, the motion of defendant for a judgment, upon the ground that the affidavit does not state an offense, was properly overruled.
Defendant contends further that the trial court erred in its charge to the jury when it stated that “fennel and sage are used in the United States Pharmacopoeia as drugs and, therefore, come within the definition of drugs, ’ ’ and when it stated that it would take judicial notice that fennel and sage were not foods.
Defendant also claims error upon the part of the trial judge when he answered in the affirmative the jury’s interrogatory as to whether fennel and sage used as a tea are still considered drugs. There was no evidence introduced in the present case with reference to anything in either the official United States Pharmacopoeia or the official National Formulary.
It is contended by the state that the judge may take judicial notice of the contents of those publications and that he may inform himself in any way which may seem best to him concerning subjects of which he may take such notice.
The state admits that the 1950 edition of the United States Pharmacopoeia failed to disclose the listing of. *421 fennel although it was listed in the National Formulary, and that sage was not listed in either the pharmacopoeia or the formulary.
Assuming that the court may take judicial notice of what is listed in the pharmacopoeia and formulary, under the definition of ‘ ‘ drug ’ ’ in Section 1296-1, General Code, it is not sufficient that the article he recognized in the pharmacopoeia or formulary, but to make the article a “drug” it must, in addition, be intended for use in the diagnosis, cure, mitigation, treatment or prevention of disease, and to constitute any other article a “drug” it must be intended for use in the diagnosis, cure, mitigation, treatment or prevention of disease in man or other animals or must be an article (other than food) intended to affect the structure or any function of the body of man or bodies of other animals. Therefore, the charge that an article is a drug, simply because it is listed in the pharmacopoeia or formulary, without qualifying it by its intended use, is an incorrect statement under the law of Ohio and the court committed prejudicial error in so charging.
There is no question that certain articles may be either food or drugs, depending on their intended use.
In the case of State v. Hutchinson, 56 Ohio St., 82, 46 N. E., 71, Judge Williams stated in the opinion, with reference to whiskey:
“It is none the less a medicine because it is some times taken as a beverage, or, like many other articles of medicine, may some times be applied to other than medicinal uses.”
The Hutchinson case concerned a trial of an alleged violation of the Pure Food and Drug Act.
In its brief in the present case, the state asserts that defendant was practicing medicine when she advised Mrs. Erickson to drink no water unless it was boiled or to drink Minnehaha water, and alleges that distilled *422 water is listed in the latest edition of the United States Pharmacopoeia. Assuredly, boiled or spring water would not of itself be a drug under the statutory definition unless it was intended for the uses outlined in the statute.
Defendant insists that all the advice and articles which she gave to Mrs. Erickson either concerned or were articles of food, and there is no evidence contrary to this. In fact, the court indicated to the jury that what defendant wrote on state’s exhibit 7, namely, peas, lima beans, corn, potatoes, carrots, raspberries, blueberries, bananas, rye bread, raw sugar, goat’s milk, raw milk, and Minnehaha water, are foods, although fennel and sage are not.
As we have said, there is not a scintilla of evidence to dispute the evidence of defendant that all the articles with which the present case is concerned are foods, and there is not a scintilla of evidence that they were intended for use in the diagnosis, cure, mitigation, treatment or prevention of disease.
Mrs. Erickson testified:
“Q. Was there or was there not any reason stated why you should take those pills?
“A. No, I don’t think she made a definite statement. ’ ’
Defendant gave treatments to Mrs. Erickson, within the scope of her license for limited medical practice, which lasted almost two hours, and defendant insists that the charge which she made was for that treatment; that the foods which she suggested were not to cure any disease of Mrs. Erickson but simply to supply deficiencies in diet; that defendant’s actions in reference to the foods were simply gratuities; that it was for the treatments that the charge was made; and that there is no evidence that the charge was excessive.
Mrs. Erickson testified with reference to an arrange *423 ment for further treatments that defendant told her not to come back if she were not serious because of the expense and she should buy herself an expensive present rather than come back for treatments; that she told defendant she was serious and would let defendant know when she would return; that she later called defendant and cancelled the appointment; and that that conversation took place during defendant’s examination of her.
It seems to us that there is an entire lack of proof to sustain the verdict of guilty rendered in the present case in view of the fact, there was positive testimony that all articles given or recommended to Mrs. Erickson were foods, that they were not intended for use in the diagnosis, cure, mitigation, treatment or prevention of disease, and that the charge of $35 was made for the treatments alone; that there is no evidence that such charge is exorbitant for such treatments; that the articles in question can not be said not to be food as a matter of law; and that Mrs. Erickson herself testified that nothing was said to her by defendant that such articles were given or recommended to her for the purposes mentioned in Section 1296-1 (2), General Code.
Defendant moved for a directed verdict at the close of the state’s evidence and renewed that motion at the conclusion of all the evidence, which motions were overruled by the court.
The efforts of the Ohio State Medical Association to prevent the unlawful practice of medicine and surgery, as well as the efforts of the Better Business Bureau to protect the public from fraud and trickery, are highly commendable; nevertheless, it is still the law of Ohio that a defendant in a criminal action cannot be convicted on general principles or mere suspicion, and in order to convict it is essential that all material elements *424 of the offense charged must be proved beyond a reasonable donbt. That has not been done in the present case, and, therefore, the judgment of the Court of Appeals is reversed and final judgment is entered for the defendant.

Judgment reversed.

Matthias and Hart, JJ., concur.
Taft, J., concurs in paragraphs two, three and four of the syllabus and in the judgment but dissents from paragraph one of the syllabus.
Weygandt, C. J., Zimmerman and Middleton, JJ., concur in paragraphs one and four of the syllabus but dissent from the judgment.